IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA
    Plaintiff
    vs.

Criminal Action No: 07-98-SLR

CARL W. WILSON, JR.
    Defendant

### SENTENCING MEMORANDUM

NOW COMES the Defendant, Carl W. Wilson, Jr., by and through his counsel, who requests this Court, pursuant to 18 U.S.C.§ 3553 (a), for a downward variance from the guidelines which Guideline Range for Imprisonment for Total Offense Level of 21 and a Criminal History Category of I is 37 to 46 months. See United States v. Vampire Nation, 451 F.3d 189, 195 n.2 ( 3rd Cir. 2006), ruling that a post Booker [United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 ( 2005) discretionary sentence not based on a specific Guidelines departure provision is known as a Sentencing "Variance". This request is based upon the following:

**I. Nature and circumstances of the offense.**

The Defendant is charged by Information with possessing a 40 second video which he received from Paul Thielemann. That video was not found on the Defendant's computer but was referenced in a single chat room conversation between Mr. Wilson and Thielemann on December 20th, 2006. In that chat conversation the only reference to that video is that it was a video "of the lil girl". Mr. Wilson voluntarily spoke with the Detective Elliott of the Delaware State Police on May 25th, 2007 and admitted to receiving the video and deleting it. He had received another

video from Thielemann but that was of an adult female. He told the Detective that he deleted the video because it disgusted him.

In the chat on December 20th, Mr. Wilson was asked by Thielemann if he "jerk[ed] off while [sic] ago" and Mr. Wilson says that he did so and, when asked to what, he said to "that vid of the lil girl". Mr. Wilson admitted to the State Police that he received such a video and that he deleted it. His statement that he "jerked off" to the video was not true. All of his statements in the chats about his "interest" in young children were not true and were puffing to keep the chats with Thielemann and the relationship with Thielemann ongoing. For example, his claims that he had sex with teen age girls were made up and the State Police were not able to corroborate any of the claims. As a further example, there were chats about a 17 year old girl named Amber Jones who allegedly watched while Thielemann had sex with her younger siblings. Unknown to Mr. Wilson, however, this was all made up since Amber Jones was, in reality, Thielemann. The presentence report states that : " he said a lot of things in the chats about having a sexual interest in, and sexual contact with, minors but it was all lies. It was stuff he made up, thinking that if he said such things to Thielemann 'he'd leave me alone'", page 17, ¶ 19.

## II. History and characteristics of the Defendant.

There is no evidence that Mr. Wilson ever had any desire for or relationship with young children. The chat conversations are disgusting and Mr. Wilson does not condone them or the conduct they represent. In the chats it is Thielemann who initiates discussions about sex with minors. When the chats with Thielemann began in March of 2006, Mr. Wilson was going through a bad time. He had lived with a girlfriend from August 2005 to February 2006. His girlfriend was hospitalized for an infection and when she was released from the hospital she would not come home to her children but would stay out all night and party. Mr. Wilson took

care of her children- a teenage boy and a three year old boy. Her continued neglect of her children led to verbal disagreements and he left her in February 2006 because of her irrational conduct. He was lonely and began the chats with Thielemann. He had always been straight and for the first, and last, time engaged in a sexual relationship with a male, Thielemann which is described in the chats. When he was involved with Thielemann on a casual basis he had a girlfriend Sarah Cannon. He met her in August 2006 and lived with her beginning September 2006. While they were dating she was sleeping with her best friend and in late October or early November 2006 she attempted suicide. She took pills and locked the door to their apartment. He could not get in so he had maintenance open the door. She was on the floor and he called the ambulance. He took the pills away from her and she was admitted to Kent General Hospital for about a week. She was then discharged and admitted to the Rockford Center. She was discharged from the Rockford Center the Monday before Thanksgiving 2006. She came home to their apartment and went to Thanksgiving with his parents in Milton Delaware. They returned to their apartment in Newark and she stopped taking her medications or going to counseling. She became distant and slept on the couch. She would leave without telling him where she was going. He followed her to her girl friend's house and he took her dog and books to the girl friend's house. She called the police and came to the apartment with the police. He went to live with his parents in Milton and returned to the apartment to get his things. On that day she charged him with offensive touching during the move and he was arrested on December 8, 2006. At the time he possessed the video he was not under suprevision and had not been convicted of any crime. On March 5, 2007 he was convicted of offensive touching and placed on probation for 8 months. His probation officer reports that he was compliant but he was subsequently discharged from probation as unimproved since he had been arrested on the current charges on July 3, 2007 and

could not meet with his probation officer..

Mr. Wilson had been a productive member of society prior to his arrest. He was employed full time for Materials Testing and, as the presentence report states, it would consider rehiring him upon his release.. He also has been promised a job making counter tops when he is released. Mr. Wilson wants the Court to know that he will never again engage in any conduct- hypothetical or otherwise- where children are victims..

### III. THE NEED FOR THE SENTENCE IMPOSED

#### A. Seriousness of the offense, promotion of respect for the law and just punishment

He fully accepts responsibility for his conduct and his illegal possession of the video. He understands that the possession of the video ratifies the abuse of the young girl and makes such abuse economically worthwhile. The video was made years ago when the victim was very young He understands that "Vicky" is now in college and that her impact statement ,which he has not seen, was made for all cases in all jurisdictions where her video has been used... Mr. Wilson is sickened by the lifelong effects of the abuse which this young victim has had to try to deal with. He is acutely aware of the effects on the young victim and on any under age victim who is subjected to sexual abuse.

Mr. Wilson possessed this 40 second video for a few minutes and then he deleted it in disgust. He knows that possession of this video is a serious offense because of the effects on this young girl caused by the creation of this video. A 36 month period of incarceration would be, respectfully, greater than would be necessary to promote respect for the law and would not be just punishment given the particulars of the offense and the other factors in § 3553.

#### B. Adequate deterrence to criminal conduct.

Mr. Wilson has readily admitted his criminal conduct and knows that he will need to be

punished for that conduct. He has been incarcerated for over eight months and knows that punishment has deterrent and punitive components. He respectfully submits that he is deterred from any such conduct in the future. He is not a threat to young children and has no interest in young children. He possessed a 40 second video which he then promptly destroyed. He has no interest in men and is not a threat to children.

Enclosed are statements on his behalf attesting to his reputation for peace and good order and his law abiding behavior over his entire life. This offense was an aberration which will not be repeated. The significant restrictions placed upon him during his supervised release- which are set forth in ¶¶ 70-76- are punitive and will provide control over his conduct to ensure that he will be no further threat to break the law. "Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty", Gall v. United States, 2007 U.S. LEXIS 13083 ( Dec. 10, 2007) [18].

### C. Protection of the public

Mr. Wilson is not a threat to the public or to repeat his conduct described on the chats. Those chats were limited to the unique relationship with Thielemann which has been permanently severed and will not be repeated. Mr. Wilson was attacked by Thielemann in prison and Thielemann was removed to another prison because of that attack. Mr. Wilson had a one-time sexual relationship with another male and has nt interest in a bisexual or gay lifestyle. He is ashamed by that conduct but there is nothing in the record to indicate that Mr. Wilson is a threat to the public. He was not involved in or charged with any illegal sexual or abusive conduct towards young girls. His comments about sexual conduct with young children were untrue and puffing in response to suggestions or questions by Thielemann. He desires to go to work and continue the law-abiding life he held prior to meeting Thielemann whose real name he did not

even know during his relationship with him.

### D. The sentences and range available

Mr. Wilson's charges and conduct are on the low end of the spectrum as compared with the other defendants who have pled guilty as a result of their conduct with Thielemann. Mr. Wilson does not know all of the conduct allegedly committed by those other defendants but believes that most of them actually engaged in, and pled guilty to, much more serious offenses. For example, one defendant allegedly received money for using a young child for sexual purposes at the request of Thielemann.

The mitigating factors Mr. Wilson requests this Court to consider include his background, his destruction of the video, his possession of a single 40 second video; his employment history and opportunity for employment if and when he is released; his eight months of incarceration; his cooperation with the police. He recognizes that his lack of criminal record and his acceptance of responsibility have already been factored into the 37-46 months guideline.

Respectfully, however, Mr. Wilson requests that the Court vary downward from those guidelines and sentence him to 24 months with credit for the time served. He will be punished significantly and the factors in § 3533 will be honored. The period of five years of supervised release which he requests will impose further punishment and restrictions on his liberty. Since Gall , supra., teaches that the Court may not presume the guidelines reasonable, Mr. Wilson respectfully requests that Your Honor make an individualized assessment based on the facts presented and vary from the guidelines downward as requested. Mr. Wilson will have been sentenced to two years in prison followed by five years of supervised release with life time consequences. He reserves the right to address the propriety of some of the conditions which are being considered by the probation office once that office makes known which conditions it will

seek.

### E. Conclusion

**WHEREFORE**, based upon the factors particular to this case and this Defendant and based upon the factors set forth in 18 U.S.C. § 3553 (a) Defendant prays that this Court grant a downward departure and sentence Mr. Wilson to 24 months with credit from July 3rd, 2007.

Respectfully submitted,

/s/ Richard R. Wier, Jr.
RICHARD R. WIER, JR.P.A.
Richard R. Wier, Jr., Esq. ( #716)
Two Mill Road, Suite 200
Wilmington, DE 19806
Attorneys for Carl W. Wilson

DATE: March 24th, 2008

cc:     Martin P. Durkin
        Senior U.S. Probation Officer

To Whom It May Concern:

I have known Carl Wilson, Jr. for 30 years, as he is my brother. Carl is organized, efficient and has an excellent rapport with people of all ages.

At all the times I have found Carl to be dependable, hard-working, conscientious and honest in character. He has helped me whenever needed by babysitting my two daughters or helping with building of my new home.

Carl demonstrates empathy and compassion for others. He is very reliable in covering other co-workers hours when needed or going that extra mile to help a personal friend move from one home to another.

Carl helps out with my two daughters, his nieces, when needed. In one particular instance when my 11 year old was being called a four-eyed freak because she where's glasses, he sat her down and talked to her about how mean people can be. He told her that she was a beautiful girl and that what others say shouldn't matter. He took the time to talk and listen to her and made nice comments to help build her self esteem. And when Sloane needs help with her homework, he would help her with her math, since I am not smart in that area. Carl would also help her with her Game Boy and other games. With my 3 year old, she loved riding on his back like a horse. He would get down at her level and play and role around on the floor with her. She loved rolling the ball back and forth with him too.

I use to work out of my home and when I had to go run errands, he would watch the girls for me. The girls enjoyed his company. Sloane asks about him everyday and she writes him letters.

When I was going through a bad relationship several years ago, Carl would come over to my house and just sit with me. I was having problems sleeping with all the stress and he would come over and sleep on the sofa so I could get a good nights sleep and help take care of my daughter when she would wake up.

My brother is a phone call away for whatever I may need, and I feel these attributes demonstrate someone with exceptional character.

Sincerely,

Connie L. Wilson

To Whom It May Concern:

I am writing this letter in reference to my son, Carl Wilson, Jr. Carl is a great friend and caring person. He loves all kinds of animals especially his dog Storme. She misses him so much!

Carl has had various job experiences throughout his life. He was a lifeguard at Sea Colony. He actually used these skills to pull a man out of the surf. Carl was a material tester by testing concrete at Dover Air Force Base in Dover, Delaware. He was asked by his supervisor to take classes to better himself, in which he did.

Carl is a very compassionate person. He helped his exgirlfriend when she overdosed on pills and tried to commit suicide. He also helped his best friend with his drinking problem.

Carl's passion is for volleyball. He would go to volleyball tournaments all up and down the East Coast. He has won championships but just playing the game is what he loves. He is a good teacher in the sport. He coached the Indian River School District's Volleyball Team for 1 year.

Carl is very close to his family. We would communicate daily. That day in July when he left to go see his Parole Officer and never came home, I knew something was wrong. I was looking for him for 3 days before I found his truck at the Parole Officer's Office and then she informed me what had happened. This whole situation has been very troubling for us as a family. Since he has two wonderful nieces who adore him and miss him very much. I hope he comes home soon!

Sincerely,

*Deanna L. Wilson*

Deanna L. Wilson

To Whom It May Concern:

I am writing this letter in reference to my son, Carl Wilson, Jr. Carl is an outstanding citizen. He is a caring and helpful person. Even at a young age, Carl showed these trates when growing up. I was his coach for ten years for Milton Little League starting with Pee Wee all the way up to Major League Baseball. I also helped him on the All Stars Team for 2 years. In his adolesence he raced radio remote control cars for 3 years and won the championship two years in a row. In all sports he showed great sportsmanship and helped others.

Carl helped coach the Volleyball Team for one year at Indian River School District. He traveled throughout the Summer to play in various Volleyball Tournaments in the surrounding states.

Carl is very dependable. He was always to work on time and would work extra hours to cover another employees shift when needed. He goes out of his way to help others.

Deep down I know Carl would never harm anyone. This situation has ruined his life forever.

Sincerely,

*Carl W Wilson Sr.*

Carl W. Wilson, Sr.

To Whom It May Concern:

Carl Wilson Jr. is my uncle. My uncle Carl helped me play pacman and beat my high score. He would help me with my math homework. He would fix me hot pockets when I got hungry. He helped me play T-ball. He's going teach me how to play volleyball when he comes home. I write him letters and he writes me letters. I miss very much and love him and want him to come home.

*Sloane Dorman*
Sloane Dorman

To Whom It May Concern:

This is character reference for Carl W. Wilson, Jr. I have known the family since 1990 when I worked with his mother. Carl would occasionally come to my lot and help me clear it for my home. He did not accept any money when I offered to pay him. He just said glad to help! I feel he is a wonderful person and is very sincere.

Sincerely,

Barry Price

To Whom It May Concern:

This is character reference for Carl W. Wilson, Jr. I have known Carl since 1993. He is a very helpful person. He loves animals and loves to play volleyball. He goes out of his way to help others when needed.

Carl has a good work ethic. He will not leave until the job is done. He shows great teamwork with fellow employees. If his task is completed, he jumps in and helps a fellow teammeber until all work is completed. He is a great assct to any company.

Sincerely,

Craig B. Dorman

Mark C Hedetniemi
1 Gracelyn Drive
Ocean View, DE 1990-2901

November 29, 2007

Dear Sir or Madam:

I am writing this character reference letter on behalf of Carl W. Wilson. I have known Carl since 2002, both as a volleyball player and as a friend. During this time, I have had the opportunity to become familiar with his character in the volleyball environment. Specific character traits I personally have witness include commitment, honesty, and integrity.

The first thing you must understand is that while playing in volleyball tournaments, players get frequent breaks and rests between matches. During these times, they sit around and get to know each other. You can learn much about the character of a player by those off-time conversations. I have never heard Carl say anything inappropriate.

Carl has shown himself to be a dedicated volleyball player, always willing to drive near or far to play. When he said he would be there at a certain time, he was there. Having spent countless hours playing volleyball with or against each other, I have never seen a mean streak. Carl is competitive, but not mean.

Volleyball matches without a referee can provide insight into the true character of a person. During these matches, players are required to call faults on themselves (self-referee). Some players are so competitive and want to win so badly that they will cast aside values and morals. Not only will they not call faults on themselves, but they will outright lie about these faults even in the face of incontrovertible evidence and multiple witnesses. Carl is not this type of person. Carl will call faults on himself as often as any player I know, even if it means he and his team will lose the game. This trait of honesty speaks volumes about his character.

I am not naïve and do not think any one person can truly know any other. Secrets are kept from husbands and wives all the time. I am not saying that I know everything about Carl. I am simply stating how he has interacted with me, and how I view his character. Thank you for considering my input.

Sincerely,

*Mark C Hedetniemi*

Mark C Hedetniemi

November 15, 2007

To whom it may concern,

This letter serves as a character reference for Carl Wilson. I have been friends with Carl for about 5 years. We spent most of our time together around the Maryland and Delaware Eastern Shore playing beach volleyball in the Summer time and indoor volleyball during the winter season. Carl is a very good volleyball player and I have always enjoyed playing with and against him.

On several occasions, Carl and I, often with other players, would just hang out or visit a local bar for an occasional drink and conversation after some volleyball games. Although there were times that Carl would say things that I thought were strange and disagreed with, mostly consisting of some type of revengeful hacking of people's computers, he always acted responsible and conducted himself in a professional manner.

Also, understanding the charges brought against Carl, I think it is relevant for me to say that I have never heard Carl speak of anything involving child pornography or heard other people speak of Carl being involved with any type of child pornography until seeing it in the newspaper. In fact, I am a father of a 6 and a 4 year old, which Carl has met and has been around, and he has never given me a reason not to trust him around my children.

In closing, I was certainly disappointed when I heard the charges brought against Carl. I, and some friends that know him, am curious to know exactly what Carl's involvement was, if any, with those charges. I have prayed for him that he would get through this OK. I really feel sad for him if he was just an innocent person caught up in downloading something that involved him in a child porn ring, or hope this serves as a wake up call and he gets the help he needs if there is any truth to the charges. Either way, I can say that there is a great person in Carl and I never knew him to be involved with any child pornography. Just a friend that was dependable and enjoyable to hang out with and play volleyball. Please feel free to contact me if I can be of any further assistance in this matter at 302-542-7980.

Sincerely,

Jim Barnes
Friend of Carl Wilson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**UNITED STATES OF AMERICA**
    **Plaintiff**
    vs.

**Criminal Action No: 07-98-SLR**

**CARL W. WILSON, JR.**
    **Defendant**

## ORDER

Upon consideration of Defendant's Sentencing Memorandum requesting a downward variance from 37 months to 24 months:

IT IS ORDERED this ____ Day of April, 2008 that:

Defendant's motion/request is GRANTED.

_____
Hon. Sue L. Robinson
U.S. District Court